FILED
2015 Apr-07  AM 09:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ENGINEERED ARRESTING SYSTEMS CORPORATION, | } } } | |
| Plaintiff, | } } | Case No.:  5:14-cv-00518-MHH |
| v. | } } | |
| ATECH, INC., et al., | } } | |
| Defendants. | } } | |

### MEMORANDUM OPINION

This is a trademark infringement action.  Plaintiff Engineered Arresting Systems Corporation (ESCO) manufactures, distributes, and sells aircraft arresting systems for military and commercial aircraft.  ESCO filed this action against various defendants alleging trademark infringement, false designation of origin, and false advertising under the Lanham Act, and common law unfair competition and trademark infringement, in connection with a United States Air Force solicitation seeking bids for a Polish Air Force contract.  (Doc. 39).

Defendants SCAMA AB, Harald Åhagen, Atech, Inc., and Philip Åhagen filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), failure to state a claim under Rule 12(b)(6), and failure to state fraud with

particularity under Rule 9(b).  (Doc. 23).[1]  For the reasons discussed below, the Court DENIES defendants' motion to dismiss.

# I.   STANDARD OF REVIEW

## A.   12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction, ESCO need only "present[] enough evidence to withstand a motion for a directed verdict." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).  A motion for a directed verdict must be denied where "there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions."  *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).  The Court must construe all reasonable inferences in favor of the non-moving party.  *Stubbs*, 447 F.3d at 1360.

## B.   12(b)(6)

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the

---

[1] The defendants also raised subject matter jurisdiction and service of process arguments, which the Court addressed in an earlier order.  *See* Doc. 56.

requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'"  *Maledy v. City of Enterprise*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  "Specific facts are not necessary; the statement needs only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  A court must accept well-pled facts as true.  *Grossman v. Nationsbank*, *N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

## II.   FACTUAL AND PROCEDURAL HISTORY

Engineered Arresting Systems Corporation (ESCO) is a Delaware company engaged in the business of manufacturing, distributing, and selling aircraft arresting systems for military and commercial aircraft.  (Doc. 39, ¶ 5).  ESCO has a trademark for its PORTARREST aircraft arresting system.   (Doc. 39-1). Defendant SCAMA AB is a Swedish company that manufactures arresting systems.  (Doc. 39, ¶ 12).  Defendant Harald Åhagen, a resident of Sweden, is President of SCAMA.  (Doc. 39, ¶ 13).  SCAMA is the sole owner of defendant

Atech, an Alabama corporation.  (Doc. 39, ¶¶ 6, 37).  Defendant Philip Åhagen, the son of Harald Åhagen, is the President and Secretary of Atech.  (Doc. 39, ¶ 10).

On October 23, 2012, the United States Air Force, through the Foreign Military Sales Program, placed an official solicitation for products for the Polish Air Force.  (Doc. 39, ¶ 30).  The solicitation included "two (2) BAK-12 Above Grade Fixed Hook Cable Systems," "one (1) PORTARREST-IV/BAK-12 'Mobile' Hook Cable System," and certain spare parts for the "PORTARREST-IV/BAK-12 'Mobile' Hook Cable System."  (Doc. 39-2, pp. 4–6).  Because federal acquisition regulations prohibit soliciting brand name products without justification and approval, the Air Force also published a Brand Name Justification.  (Doc. 39, ¶ 32).  The Brand Name Justification stated: "This brand name is required because the Polish government specifically requested the BAK-12 Aircraft Arresting System in the LOA (PL-D-GAL) with the US government.  It is therefore in the best interests of the Government to limit offers to procure the BAK-12 only." (Doc. 39-3, p. 3).

ESCO submitted a proposal in response to the Air Force Solicitation.  (Doc. 39, ¶ 34).  Atech also submitted a proposal and a letter of intent stating that if the Air Force selected its bid, the team fulfilling the contract would consist of Atech, SCAMA, and two other entities.  (Doc. 39, ¶ 36).  The proposal also stated that SCAMA would acquire an ownership interest in Atech, that SCAMA had

inspected Atech and its facilities, and that SCAMA's processes, product assurance methodologies, and other business practices would be used in fulfilling the contract. (Doc. 39, ¶¶ 37–39).

The Air Force awarded the Polish Air Force contract ("PAF contract") to Atech. (Doc. 39, ¶ 45). ESCO alleges that defendants used ESCO's trademarks in an intentional attempt to mislead the USAF into believing that the defendants could provide ESCO's brand name systems. (Doc. 39, ¶ 44). ESCO also alleges that when the USAF awarded the contract to the defendants, the USAF was confused and incorrectly believed it was getting ESCO's PORTARREST brand and BAK-12 brand systems. (Doc. 39, ¶ 49). Finally, ESCO alleges liability on the part of the Swedish defendants by asserting that Atech acted as a front or agent for SCAMA in the submission of the proposal. (Doc. 39, ¶ 40).

ESCO filed its complaint on March 21, 2014, alleging trademark infringement, false designation of origin, and false advertising under the Lanham Act, as well as a common law claim for unfair competition and trademark infringement. (Doc. 1). On April 21, 2014, defendants filed a motion to dismiss raising the following issues: lack of personal jurisdiction over SCAMA and Harald Åhagen under Rule 12(b)(2); failure to state a cause of action against SCAMA, Philip Åhagen, and Harald Åhagen under Rule 12(b)(6); and failure to state fraud claims with particularity against all defendants under Rule 9(b). (Docs. 23, 24).

5

ESCO filed an amended complaint on May 15, 2014.  (Doc. 39).  The Court treated the previously-filed motion to dismiss as a motion to dismiss the amended complaint.  (Doc. 56).

ESCO filed a response in opposition (Doc. 35) and requested limited discovery on personal jurisdiction, which the Court allowed.   (Docs. 32, 56).  ESCO filed its supplemental brief on personal jurisdiction on February 11, 2015, along with a declaration from Jennifer Deal, ESCO's attorney.   (Doc. 73).[2]  Defendants replied to ESCO's brief on personal jurisdiction (Doc. 74) and moved to strike Ms. Deal's declaration.  (Doc. 76)

On this record, the Court considers the merits of the motion to dismiss (Doc. 23) and the motion to strike the declaration of Jennifer Deal (Doc. 76).

III.    Analysis

A.     Motion to Strike

SCAMA and Harald Åhagen ask the Court to strike the declaration of Jennifer Fairburn Deal, ESCO's attorney.  (Doc. 76). They assert that Ms. Deal's declaration contains hearsay and is not based upon personal knowledge.  (Doc. 76, p. 1).  Ms. Deal offers her declaration to organize the extensive jurisdictional discovery in this case.  (*See* Doc. 73-2).  In ruling on the defendants' motion to

---

[2] ESCO also stated that in the event that there was still a question regarding personal jurisdiction, ESCO moved to compel defendants to provide documents and testimony that defendants withheld on jurisdictional discovery.  (Doc. 73).  This alternative motion is MOOT because the Court can determine personal jurisdiction over the Swedish defendants on the record before it.

dismiss, the Court has relied only on the exhibits to the declaration, and not the declaration itself.   Therefore, the Court denies defendants' motion to strike as moot.

**B.**   **Personal Jurisdiction**

**1.**      **Legal Standard for the Exercise of Specific Jurisdiction**

Defendants challenge the Court's personal jurisdiction over Swedish defendants SCAMA and Harald Åhagen.   In determining whether to exercise personal jurisdiction over a foreign defendant, a federal court must consider (1) whether the exercise of jurisdiction is permitted by the state long-arm statute, and (2) whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.   *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).   Here, the two inquiries merge because "Alabama's long-arm statute permits service of process to the fullest extent constitutionally permissible."   *Sloss Indus. Corp. v. Eurison*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b)).

In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court held that "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."   *Daimler AG v. Bauman*, 134 S. Ct. 746, 754

(2014) (internal quotations omitted).   *International Shoe* gave rise to two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler*, 134 S. Ct. at 754.  General jurisdiction "refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose."   *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.27 (11th Cir. 2009).  Specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions with the forum."   *Id.*

In determining whether a forum has specific jurisdiction over a nonresident defendant, a court must focus on "the relationship among the defendant, the forum, and the litigation."   *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation omitted).   In other words, "the defendant's suit-related conduct must create a substantial connection with the forum State."   *Id.*  The Eleventh Circuit has applied a three-prong test for determining whether sufficient minimum contacts exist for the exercise of specific jurisdiction: (1) "the defendant must have contacts related to or giving rise to the plaintiff's cause of action"; (2) "the defendant must, through those contacts, have purposefully availed itself of forum benefits"; and (3) "the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there."   *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010).  Once a showing of minimum contacts is made, a

8

defendant must make a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010). "A nonresident's purposeful affiliation with a state for purposes of pecuniary gain has long been deemed a sufficient contact to render the nonresident subject to suit in the courts of that state in litigation related to that business transaction, even if the nonresident has no physical presence in the state whatsoever." *Pepsi-Cola Bottling Co. of Ft. Lauderdale-Palm Beach, Inc. v. Buffalo Rock Co., Inc.*, 593 F. Supp. 1559, 1565 (N.D. Ala. 1984) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)).

## 2.   This Court has Specific Jurisdiction over SCAMA and Harald Åhagen

There is sufficient evidence of specific jurisdiction in this case to withstand a motion for a directed verdict. The jurisdictional discovery shows that SCAMA, led by Harald Åhagen, purposefully affiliated itself with Alabama so that the company could bid for and ultimately profit from the PAF contract.

In February 2012, Harald Åhagen e-mailed D'Salient, an Alabama company, and Kyu Shin, Alabama resident,[3] to discuss the possibility of forming a

---

[3] In February 2012, Kyu Shin owned SEI Manufacturing. (Doc. 73-3, p. 22). In May 2012, defendants Kwae and Sang Shin sold Atech to Hyon Shin, Kyu Shin's wife, for $7500. (*Id.*; Doc. 30-1, p. 2). Hyon Shin sold Atech to SCAMA in August 2013 after Atech won the PAF contract. (Doc. 73-39).

partnership to bid on the PAF contract. (Doc. 73-4). Mr. Åhagen stated that SCAMA could not win the contract "by our own force." Mr. Åhagen also stated that SCAMA would supply all of the engineering support, drawings, training, etc. Finally, Mr. Åhagen stated that "a very important factor is the political support we can expect from the State of Alabama!" (Doc. 73-4). After Mr. Shin agreed to participate in efforts to bid on the PAF contract, Mr. Åhagen and Mr. Shin worked together to draft the pre-solicitation paperwork. (Doc. 73-5, p. 2).

Ultimately, SCAMA, Atech, D'Salient, and DCM Support Services, Inc., formed a "bid team" to work on a bid for the PAF contract. (Doc. 73-3, p. 22). SCAMA played a large role in the preparation of the bid, including but not limited to conducting the site survey and designing the layout of the systems (Doc. 73-3, p. 34); drafting and providing warranties (Doc. 73-27); controlling the time schedule for fulfilling the PAF contract (Docs. 73-20, 73-22); and drafting and revising correspondence to be sent to the USAF (Doc. 73-23). In one e-mail, D'Salient noted: "SCAMA has the money and is in-effect in control . . . Bottom line if SCAMA does not have a handle on the situation no funds are coming . . . " (Doc. 37-21). Atech had to get SCAMA's approval before signing the contract. (Docs. 73-31, 73-32).

The paperwork that Atech submitted to the USAF represented that the bid was coming from an "ATECH/SCAMA/DCM/SALIENT TEAM" whose focus

would be to "[p]rovide a U.S. platform for manufacturing of SCAMA arresting systems." (Doc. 73-26, p. 26). The submission also represented that if the bid team got the PAF contract, "SCAMA/DCM/SALIENT will become a consortium with ATECH by executing the Letter of Intent and execute the ownership of all parties in ATECH." (Doc. 73-26, p. 36).

In fact, after the USAF awarded the PAF contract to the defendants, SCAMA purchased Atech. (Doc. 73-39). The contract for that purchase included Alabama choice of law and choice of venue clauses. (Doc. 73-39, ¶¶ 42–43). A few days after SCAMA became Atech's sole shareholder, SCAMA elected Harald Åhagen as Atech's sole board member. (Doc. 73-48). That same day, Harald Åhagen hired his son, Philip Åhagen, to be the president and secretary of Atech. (Doc. 37-3, p. 11). Philip had just graduated from University a year and a half before and had worked for SCAMA after graduating. (*Id.*). During this transition, Atech was severely underfinanced. SCAMA provided whatever money Atech needed—millions of dollars—often without consulting its president, Philip Åhagen. (Doc. 73-41; Doc. 73-3, p. 51). SCAMA and Atech have purchased millions of dollars' worth of goods from one another. (Doc. 73-3, pp. 44–45; Doc. 73-43; Doc. 73-45).

SCAMA is intimately involved in the day-to-day running of Atech, including negotiating the lease on Atech's property, hiring many of its employees,

11

training the employees in Alabama, and paying for Philip Åhagen's housing. (Doc. 73-3, pp. 13, 14, 16, 17, 20).  SCAMA representatives, including Harald Åhagen, have made numerous visits to Alabama.  (Doc. 73-11, p. 6).  It also appears that SCAMA and Harald Åhagen generally disregard Atech's bylaws and do not observe corporate formalities; Philip Åhagen does not have any duties as Atech's secretary, and Atech has not had official board or shareholder meetings. (Doc. 73-3, pp. 13, 15, 20, 57).

There is sufficient evidence in the record to establish that Harald Åhagen and SCAMA purposefully affiliated themselves with Alabama for the purpose of pecuniary gain.  The current action for trademark infringement arises directly from the award of the PAF contract to Atech and SCAMA.  Winning the PAF contract was the primary goal of the Swedish defendants' affiliation with Alabama, and the Swedish defendants could reasonably anticipate being haled into court in Alabama on issues related to this contract.  SCAMA and Harald Åhagen cannot make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice in this case, considering the closeness of SCAMA's ties with Alabama and the frequency with which SCAMA representatives travel to Alabama.  Because there is sufficient evidence of specific jurisdiction to withstand a motion for directed verdict, the Court denies SCAMA and Harald Åhagen's motion to dismiss for lack of personal jurisdiction.

**C.     12(b)(6) and Fraud**

ESCO has asserted claims for trademark infringement, false designation of origin, false advertising, and common law unfair competition and trademark infringement. (Doc. 39, pp. 17–21). Defendants move to dismiss all four causes of action for failure to state a claim as to SCAMA, Harald Åhagen, and Philip Åhagen. (Doc. 24, pp. 1–3). Defendants also move to dismiss the second, third, and fourth causes of action for failure to state fraud with particularity as to all defendants. (*Id.*).

**1.     12(b)(6)**

To state a claim for trademark infringement or unfair competition under the Lanham Act and state law—ESCO's first, second and fourth causes of action—ESCO need only allege that (1) it owns valid rights in the trademarks at issue, and (2) there is a likelihood of confusion between ESCO's marks and the defendants' use of those marks. 15 U.S.C. § 1114(1); *Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 935 n.16 (11th Cir. 2010) (citing *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503–04 (11th Cir. 1985)). In its complaint, ESCO alleges it has a valid trademark on the term PORTARREST and that Atech submitted a bid on behalf of SCAMA that misleadingly misused ESCO's trademarks, resulting in a likelihood of confusion on the part of the USAF. (Doc. 39, ¶¶ 19, 40, 44). Additionally, ESCO alleges

13

that Philip Åhagen directed, controlled and ratified the actions of Atech and that Harald Åhagen directed, controlled, and ratified the actions of SCAMA.  (Doc. 39, ¶¶ 10, 13).  "[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement . . . ."  *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994).  Thus, ESCO has plausibly alleged all necessary elements for trademark infringement and unfair competition against Atech, SCAMA, Harald Åhagen, and Philip Åhagen.

To sustain a claim for false advertising, ESCO must show "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the [plaintiff] has been—or is likely to be—injured as a result of the false advertising."  *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  ESCO alleged that defendants made misleading representations that they could manufacture ESCO's trademarked products and that these misleading statements led the USAF to mistakenly award the PAF contract to defendants rather than ESCO.  (*See* Doc. 39, ¶¶ 66–69).  ESCO has plausibly stated a claim for false advertising.

### 2. Fraud

The defendants assert that Rule 9(b) applies to ESCO's claims for false designation of origin, false advertising, and common law unfair competition and trademark infringement. (Doc. 24, p. 29). However, the Eleventh Circuit applies Rule 8 to decide motions to dismiss trademark actions. *See Synergy Real Estate of SW Fla., Inc. v. Premier Property Mgmt. of SW Fla., LLC*, 578 Fed. Appx. 959, 961–62 (11th Cir. 2015) (applying Rule 8 to motion to dismiss claim for unfair trade practices in violation of the Lanham Act). As discussed above, ESCO's complaint alleges enough facts to provide defendants with fair notice of what claims are being alleged and the grounds on which the claims rest. Therefore, the Court denies the defendants' motion to dismiss under Rule 9(b).

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** defendants' motion to dismiss (Doc. 23) and **DENIES** the motion to strike Ms. Deal's declaration as **MOOT**. (Doc. 76). The Court directs the Clerk to please **TERM** Docs. 23 and 76.

Pursuant to the discussion on the record at the March 10, 2015 hearing in Huntsville, the parties shall engage in limited discovery in anticipation of mediation. In the pre-mediation phase of discovery, each side shall be limited to 3 depositions. The pre-mediation discovery is due on September 30, 2015. The

parties shall participate in mediation on or before November 16, 2015.  On or before November 23, 2015, the parties shall file a joint status report updating the Court on the results of the mediation.

The Court directs the Clerk to please mail a copy of this order to defendant Kim Guimarin.

**DONE** and **ORDERED** this April 7, 2015.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

16