FILED

2020 Mar-31  PM 02:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ENGINEERING ARRESTING** | } | |
| **SYSTEMS CORPORATION,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.:  5:14-cv-00518-MHH** |
| **v.** | } | **(FILED UNDER SEAL)** |
| | } | |
| **ATECH, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION[1]

Engineered Arresting System Corporation (ESCO) alleges that defendants Atech, Inc., SCAMA AB, and Phillip Ahagen infringed on ESCO's "BAK-12" trademark in violation of the Lanham Act when the defendants responded to a United States Air Force solicitation for BAK-12 and PORTARREST-IV/BAK-12 mobile aircraft arresting systems. (Doc. 39, p. 17). In addition to its trademark infringement claim, ESCO asserts claims of false designation of origin and false advertising in violation of § 43(a) of the Lanham Act and common law unfair competition and

---

[1] The Court is issuing this opinion during a declared national emergency concerning COVID-19. To enable parties to pursue their rights during this emergency, the Court is continuing its work. For information about the timing of appeals, please review the information provided in the conclusion of this opinion. The Court is including this procedural information in each opinion that it issues during the national emergency.

trademark infringement claims.  (Doc. 39, pp. 19–21).  The Court already has held that the defendants did not infringe ESCO's trademarks.  (Doc. 146, pp. 38, 41 – SEALED).  The defendants now ask the Court to enter judgment in their favor on the balance of ESCO's claims.  (Doc. 154).  For the following reasons, the Court grants the defendants' motion.

## I.   SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party.  *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018).  Because ESCO is the non-movant, the Court will present the

evidence in the light most favorable to it.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns a USAF procurement of aircraft arresting systems for the Polish Air Force (PAF).  An aircraft arresting system is a mechanical system used to rapidly decelerate aircraft as they land.  (Doc. 136-35, p. 2, ¶ 5).  An aircraft arresting system absorbs the forward momentum of aircraft landing in small spaces or emergencies to prevent the aircraft from overrunning the landing zone.  (Doc. 136-35, pp. 2–3, ¶ 5).

An aircraft arresting system consists of an energy absorber and an engagement system.  (Doc. 136-35, p. 4, ¶¶ 10–11).  An energy absorber is a friction brake, hydraulic brake, or textile brake.  (Doc. 136-35, p. 4, ¶ 10).  The engagement system connects the landing aircraft to the energy absorber.  (Doc. 136-35, p. 4, ¶ 11).  An engagement system may consist of a net, cable, or engineered materials.  (Doc. 136-35, p. 4, ¶ 11).  The landing aircraft makes contact with the engagement system, and the energy absorber dissipates the kinetic energy of the aircraft.  (Doc. 136-35, p. 4, ¶¶ 10–11).

ESCO is the world's leading designer and manufacturer of military aircraft arresting systems.  (Doc. 136-35, p. 3, ¶ 6).  The BAK-12 arresting system is one of ESCO's main products.  (Doc. 136-35, p. 3, ¶ 6).  The BAK-12 system is a

mechanical rotary friction brake that uses a cable-hook system to decelerate a landing aircraft.  (Doc. 136-35, p. 4, ¶ 13).

On October 23, 2012, USAF issued a solicitation to procure for PAF "two (2) BAK-12 Above Grade Fixed Hook Cable Systems" and "one (1) PORTARREST-IV/BAK-12 'Mobile' Hook Cable System."  (Doc. 39-2, pp. 4–5).  At the time of the solicitation, ESCO was the only manufacturer of the BAK-12, (Doc. 136-7, p. 37), and ten of ESCO's BAK-12 systems were installed across five PAF bases, (Doc. 136-36, p. 2, ¶ 5).

In response to the solicitation, ESCO submitted a proposal to USAF.  (Doc. 103-4, p. 34).  Defendants Atech and SCAMA submitted a joint proposal.  (Doc. 136-8, pp. 15–16; Doc. 136-32, p. 3 – SEALED).  SCAMA represented that it "[wa]s technically qualified and capable of engineering and supplying on a turnkey basis fully functional aircraft arrester systems as specified under the mentioned USAF solicitations."  (Doc. 136-28, p. 15 – SEALED).  Atech made similar representations that it could provide "USAF Standard BAK-12 equipment."  (Doc. 163-4, p. 7 – SEALED).[2]  USAF understood that Atech "was presenting itself as a new competitor to ESCO . . . ."  (Doc. 74-1, p. 3, ¶ 7).

After evaluating the proposals, USAF determined that "multiple vendors were

---

[2] Currently, Atech and SCAMA both sell BAK-12 systems, systems they identify on their websites as the "USAF standard."  (Doc. 160-4, p. 2; Doc. 160-5, p. 2).

capable of providing th[e] requested equipment[,]" including ESCO and SCAMA/Atech. (Doc. 74-1, p. 2, ¶ 5). The "Defense Contract Management Agency conducted a pre-award survey [] to assess Atech's overall production capability." (Doc. 74-1, p. 3, ¶ 9). Based on the survey results, "DCMA concluded that Atech had the capability to satisfy the contract, if awarded." (Doc. 74-1, p. 3, ¶ 9). Following the pre-award survey, Jeffrey S. Smith, the contracting officer responsible for the BAK-12 contract, "concluded . . . that Atech's proposal was the lowest price technically acceptable offer." (Doc. 74-1, p. 3, ¶ 10). USAF awarded the PAF contract to the defendants on May 21, 2013. (Doc. 136-33, p. 2).

ESCO sued the defendants on March 21, 2014, (Doc. 1), and amended its complaint on May 15, 2014, (Doc. 39). In its amended complaint, ESCO alleges trademark infringement in violation of § 32 of the Lanham Act. (Doc. 39, pp. 17–18). The Court has held, as a matter of law, that "BAK-12" is a generic mark. (Doc. 146, p. 24 – SEALED). The Court maintains that holding as it examines Ethe defendants' motion for summary judgment on ESCO's false designation of origin and false advertising claims under § 43(a) of the Lanham Act and ESCO's common law unfair competition and trademark infringement claims. (Doc. 154).

## III.   ANALYSIS

### A. § 43(a) of the Lanham Act

ESCO asserts an unfair competition claim and a false designation of origin claim under § 43(a) of the Lanham Act.  The claims pertain to Atech/SCAMA's representations to USAF that they could provide "USAF standard" BAK-12 systems.  (Doc. 162-1, p. 15 – SEALED).  To establish liability under § 43(a) of the Lanham Act, "a plaintiff must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."  *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (quotations and citation omitted).

"To satisfy the first element of § 43(a) . . . a plaintiff need not have a registered mark."  *Tana*, 611 F.3d at 773.  But to receive protection under § 43(a), a mark must be "distinctive," i.e., capable of distinguishing the holder's goods from others' goods.  *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015).  The Eleventh Circuit recognizes four categories of "distinctive" marks:  (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.  *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797–98 (11th Cir. 2003).

The Court has held that "BAK-12" is a generic mark.  (Doc. 146, p. 24 – SEALED).  "Generic marks . . . are generally incapable of receiving trademark

protection . . . ." *Tana*, 611 F.3d at 774 (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007)).   Atech and SCAMA argue that an unfair competition claim cannot be based on a generic mark.  (Doc. 154, pp. 2–3).  The Court agrees.  *See Gift of Learning*, 329 F.3d at 802 (concluding that "descriptive" mark that did not acquire secondary meaning could not sustain an unfair competition claim under Florida law, a claim analogous to unfair competition under the Lanham Act); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1189 n.19 (11th Cir. 2011) ("As . . . [plaintiff] did not have enforceable rights in the . . . mark prior to [defendant's] first use of the mark, [plaintiff] does not prevail on its remaining unfair competition counterclaims.").  "Accordingly, there is no need to engage in an analysis of likelihood of confusion . . . ."  *Gift of Learning*, 329 F.3d at 802.

ESCO argues that "[a]ffirmative reliance on consumer mistake and confusion is actionable [under § 43(a)] even if . . . BAK-12 is generic.  Such a holding is mandated by *Kellogg Co. v. Nat'l Biscuit Co.* . . . ."  (Doc. 162-1, p. 6 – SEALED).  As ESCO concedes in its response brief, *Kellogg* requires only "that the defendant[s] use reasonable care to inform the public of the source of its product."  *Kellogg v. Nat'l Biscuit Co.*, 305 U.S. 111, 113–14 (1938).  The defendants did so here: "[B]ased on the assertions Atech made during the procurement process, the USAF understood that Atech was presenting itself as a new competitor to ESCO . . . ."

7

(Doc. 103-9, p. 4, ¶ 7).   Accordingly, the Court's conclusion is consistent with *Kellogg*, and the defendants are entitled to summary judgment on ESCO's unfair competition and false designation of origin claims under § 43(a) of the Lanham Act.

## B. False Advertising

To establish a claim for false advertising under the Lanham Act, a plaintiff must show that:

> (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement.

*Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012) (citation omitted).

ESCO bases its false advertising claim on "[the defendants'] claims that the BAK-12 systems . . . are the 'USAF Standard' (or similar variations of this same claim); and . . . [the defendants'] use of the [USAF] Contract . . . to obtain additional business." (Doc. 162-1, p. 20 – SEALED).   ESCO points to Atech's claim on its website that it sells BAK-12 systems, systems that are "[t]he current USAF operational Aircraft Arresting System." (Doc. 162-1, p. 20 – SEALED (quoting Doc. 160-4, p. 2)).   ESCO also points to SCAMA's claim on its website that it sells "the USAF standard BAK-12." (Doc. 162-1, p. 20 – SEALED (quoting Doc. 160-

5, p. 2)).  These statements satisfy the first element of a false advertising claim under § 43(a) only if they are "claims that are literally false as a factual matter or claims that may be literally true or ambiguous but which convey a false impression." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1261 (11th Cir. 2004) (quotations and citation omitted).

ESCO has not demonstrated that Atech and SCAMA's "USAF standard" language is literally false.  *See Hickson Corp.*, 357 F.3d at 1261.  On the record in this case, ESCO cannot meet that burden.  Christopher Peisher, a USAF Aircraft Arresting System Engineer, stated that "'[t]he USAF considers the term 'BAK-12' to be the USAF's equipment designation for an aircraft arresting system that complies with the military standard for such systems.'"  (Doc. 149, pp. 29–30 (quoting Doc. 103-2, p. 3, ¶ 3)).  Mr. Peisher testified that if a manufacturer were to provide to USAF a system that incorporated the technical data package that USAF has for the BAK-12 system, he would call such system a "BAK-12."  (Doc. 136-7, pp. 183–84).  Thus, Atech's representation on its website that BAK-12 systems are "[t]he current standard USAF operational Aircraft Arresting System" and SCAMA's representation that it has sold "the USAF standard BAK-12" are literally true.

ESCO argues that these statements, even if not literally false, could mislead consumers in at least three ways:  (1) by representing that the defendants' systems are the same as the USAF's system; (2) by representing that the USAF has tested the

defendants' systems; and (3) by representing that the defendants are USAF-approved suppliers of BAK-12 systems. (Doc. 162-1, p. 21). To establish that a representation is literally true but misleading, a plaintiff must "'present evidence of deception' in the form of consumer surveys, market research, expert testimony or other evidence." *Hickson Corp.*, 357 F.3d at 1261 (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)). ESCO has not done so in this case.

ESCO has provided no evidence to support its contention that "USAF standard" misrepresents to consumers that the defendants' systems are the same as USAF's systems. The record here tends to support the opposite conclusion: The USAF inspected and approved Atech's BAK-12 system. (Doc. 136-7, p. 37, tpp. 139–40 – SEALED; Doc. 136-23, pp. 41–42, tpp. 157–58; Doc. 136-33, p. 2). Because USAF has inspected and approved Atech's BAK-12 system, the defendants use of "USAF standard" legitimately may "be interpreted by consumers to mean that . . . Defendants' systems have been tested by the USAF . . . and/or [] Defendants are USAF-approved suppliers of [BAK-12] systems . . . ." (Doc. 162-1, p. 21 – SEALED). And ESCO has provided no evidence that a consumer would be misled by the defendants' use of "USAF standard." ESCO's unsubstantiated assertions do not satisfy the requirements of Rule 56.

ESCO argues that the defendants made to the USAF and the PAF several false or misleading statements that could support a false advertising claim. (Doc. 162-1, pp. 12–15). ESCO's argument seems to be that, while not actually false, the defendants' statements confused or misled USAF and PAF officials. (Doc. 162-1, pp. 10–11). ESCO points to the Brand Name Justification, which, ESCO argues, "incorrectly indicated that SCAMA and Atech were distributors, vendors, or sellers of products manufactured by ESCO." (Doc. 162-1, p. 12). This argument fails because ESCO equates "products manufactured by ESCO" and "BAK-12." The Court has rejected that characterization of BAK-12. (Doc. 146, p. 28 – SEALED) ("Any manufacturer can produce a BAK-12 according to USAF's drawing package of technical specifications for the BAK-12."). And the argument assumes misleading statements by the defendants, using the USAF's alleged confusion as evidence that the defendants in fact made a misleading statement. There is no evidence to support this assumption. To the contrary, the evidence indicates that the defendants expressly disclaimed affiliation with ESCO. According to Jeffrey S. Smith, the USAF contracting officer for the BAK-12 contract, "the USAF understood that Atech was presenting itself as a new competitor to ESCO . . . ." (Doc. 103-9, p. 4, ¶ 7). According to Mr. Smith, "Atech's proposal did not state that Atech was simply a re-seller of distributor of ESCO's BAK-12 systems . . . nor did

Atech in any way suggest that it would provide ESCO-assembled products to the USAF if awarded the contract." (Doc. 103-9, p. 4, ¶ 7).

Regarding the PAF, ESCO argues that "it is clear that the PAF wanted ESCO's systems and parts for this project . . . .  Unsurprisingly, the PAF was confused that it did not receive ESCO's systems." (Doc. 162-1, pp. 13–14 – SEALED).  This argument suffers from the same defects as ESCO's argument regarding the defendants' alleged misrepresentations to the USAF.  First, it improperly equates "BAK-12" and ESCO's products.  While ESCO makes BAK-12 systems, ESCO no longer is the sole manufacturer of BAK-as systems.  Second, USAF solicited and evaluated the bids for "two (2) BAK-12 Above Grade Fixed Hook Cable Systems" and "one (1) PORTARREST-IV/BAK-12 'Mobile' Hook Cable System" for PAF.  (Doc. 39-2, pp. 4–5; Doc. 74-1, p. 2, ¶ 5; Doc. 74-1, p. 3, ¶ 9).  USAF "concluded . . . that Atech's proposal was the lowest price technically acceptable offer," (Doc. 74-1, p. 3, ¶ 10), and USAF awarded the PAF contract to the defendants, (Doc. 136-33, p. 2).  If PAF was confused, USAF is responsible for the confusion, not the defendants.  There is no evidence that the defendants made statements, false or otherwise, to PAF.

## C. Alabama Unfair Competition

Under Alabama law, "'no word or combination of words can be exclusively appropriated if it is merely descriptive of . . . the quality, style, character, grade, or

class of goods.'"  *Fuqua v. Roberts*, 110 So. 2d 886, 889 (Ala. 1959) (quoting 87

C.J.S. Trade-Marks, etc. § 33 p. 268)); *cf. Jefferson Home Furniture Co., Inc. v.*

*Jefferson Furniture Co., Inc.*, 349 So. 2d 5, 8 (Ala. 1977) (concluding that unfair

competition claim failed where plaintiff did not demonstrate that generic geographic

name acquired secondary meaning).  "BAK-12" is generic as a matter of law.  (Doc.

146, p. 24 – SEALED).   Accordingly, the defendants are entitled to summary

judgment on ESCO's unfair competition claim under Alabama law.

### D. ESCO's Request for Additional Discovery

ESCO has asked the Court to defer ruling on the defendants' motion for

summary judgment until "ESCO is allowed to obtain the discovery it needs . . . ."

(Doc. 159, pp. 1–2, ¶ 2).  ESCO claims that it needs to conduct discovery on the

following:

> (1) the status of the Contract and whether the equipment has been put
> into operation, what drawings for BAK-12 systems were used or
> possessed by Defendants prior to and during the fulfilment of the
> Contract, and Defendants' communications with the Polish Air Force .
> . . after the Contract was awarded and through the present; (2) any
> testing of Defendants' relevant arresting systems, by the United States
> Air Force . . . or otherwise and any approval . . . by USAF of Defendants
> as a supplier of the relevant systems; (3) advertising/promotional
> activities related [sic] Defendants' systems, including . . . Defendants'
> responses to solicitations other than the Polish systems and use of or
> reliance on the Contract in relation to the same, and various claims
> made on Defendants' website; (4) . . . Defendants' profits related to its
> sales of those systems; and (5) Defendant Philip Ahagen's involvement
> in and control over the activities of Defendants Atech and SCAMA.

(Doc. 159, pp. 3–4, ¶ 5).

"Before entering summary judgment the district court must ensure that the parties have had an adequate opportunity for discovery." *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990).  For the district court to grant a non-moving party's Rule 56(d) request to defer consideration of a motion for summary judgment, the non-moving party "must show that 'postponement of a ruling on the motion will enable [it], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Smedley v. Deutsche Bank Tr. Co. Americas*, 676 Fed. Appx. 860, 862 (11th Cir. 2017) (quoting *Fla. Power*, 893 F.2d at 1316) (alteration in original).  ESCO has not made that showing here.

ESCO does not need more discovery from the defendants regarding its unfair competition claim.  ESCO contends that additional discovery "will reveal that Defendants took additional efforts . . . to maintain and engender [] continued confusion by the PAF and to palm off its products as ESCO's products or equivalent to ESCO's products . . . ."  (Doc. 159, pp. 4–5, ¶ 8(a)). The Court granted summary judgment as to ESCO's unfair competitions claim is based on the Court's prior holding that "BAK-12" is a generic mark.  Additional discovery will not change the fact that "BAK-12" is generic as a matter of law.  Moreover, as discussed, in its communications   with   USAF—communications   provided   to   ESCO—Atech

expressly disclaimed affiliation with ESCO.  (Doc. 103-9, p. 4, ¶ 7).  Accordingly, ESCO is not entitled to additional discovery regarding its unfair competition claim.

Regarding false advertising, ESCO took 30(b)(6) depositions of SCAMA, (Doc. 136-8), and Atech, (Doc. 136-14).  ESCO took the depositions of USAF Aircraft Arresting System Engineer Christopher Peisher, (Doc. 136-7), and USAF Contracting Officer Jeffrey Smith, (Doc. 136-23).  "ESCO has all the defendants' proposal documents, all of the defendants' pre-award communications with USAF, all of the defendants' pre-award communications between the various individuals who worked on the proposal, and communications among USAF personnel."  (Doc. 146, p. 20 – SEALED (citations omitted)).  These are the types of discovery materials that ESCO needs to demonstrate false advertising by the defendants.

ESCO asserts that it still needs from the defendants three categories of information:   (1) the current status of the USAF contract, (2) defendants' communications with PAF, and (3) the "drawing packages Defendants relied on in connection with the Polish systems . . . ."  (Doc. 159, p. 6, ¶ 9(b)).  According to ESCO, all three categories "would confirm that [the defendants'] advertising related to their ability to provide 'USAF standard' systems is literally false, or . . . misleading to consumers . . . ."  (Doc. 159, p. 6, ¶ 9(b)).

ESCO had ample opportunity to discover all three categories of information. ESCO had the opportunity at SCAMA's deposition to ask about the company's communications with PAF and the process by which the defendants executed the USAF contract.  ESCO did not have the same opportunity at Atech's deposition—the scope of that deposition was limited to issues of personal jurisdiction—but since then, ESCO has had an adequate opportunity to discover and supplement the record with the information it now seeks.  Moreover, for the reasons discussed above, none of this information is relevant, given the fact that USAF handled the bid solicitation and award for the PAF contract, and USAF knew that ESCO and Atech/SCAMA were offering competing BAK-12 products.

ESCO would like to have information about the current status of the USAF contract and the defendants' post-contract sales to show that "Defendants have [] used and intend to use the Contract to sell additional BAK-12 systems or parts, presumably without explaining to potential customers that the Polish systems . . . are untested and Defendants are not USAF-approved suppliers of those systems." (Doc. 159, pp. 5–6, ¶ 9(a)).  But USAF has approved Atech/SCAMA as producers of BAK-12 systems.  If Atech or SCAMA says this is so, neither is providing misleading information.

Thus, no more discovery is needed on ESCO's false advertising claim.

## IV.    CONCLUSION

For the reasons stated above, the Court grants the defendants' motion for summary judgment on ESCO's remaining claims, (Doc. 154), and denies ESCO's Rule 56(d) request to defer consideration of the motion for summary judgment, (Doc. 159).  The Court will enter a separate order closing this case.

The recent General Order Regarding Court Operations During the Public Health Emergency Caused by the COVID-19 Virus (N.D. Ala. Mar. 17, 2020) does not affect the deadline to challenge a final order or judgment on appeal.  *See* https://www.alnd.uscourts.gov/general-order-regarding-court-operations-during-public-health-emergency-caused-covid-19-virus, p. 2, ¶ 7.  The parties are reminded that under Rule 4(a)(5) of the Federal Rules of Appellate Procedure, a party may request an extension of time for a notice of appeal.  In addition, pursuant to Rule 4(a)(6), a party may ask a district court to reopen the time to file a notice of appeal for 14 days.  Parties are advised to study these rules carefully if exigent circumstances created by the COVID-19 Public Health Emergency require motions under FRAP 4(a)(5) or 4(a)(6).

**DONE** and **ORDERED** this March 31, 2020.

*Madeline H. Haikala*

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE